IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AUDACY, INC., *et al.*, | § | Case No. 24-90004 (CML) |
| | § | |
| | § | (Joint Administration Requested) |
| Debtors.[1] | § | |
| | § | |

**DECLARATION OF RICHARD J. SCHMAELING
IN SUPPORT OF DEBTORS' EMERGENCY MOTION AUTHORIZING THE
DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT WITH BROADCAST
MUSIC INC. AND OTIS PARENT, INC. AND GRANTING RELATED RELIEF**

I, Richard J. Schmaeling, hereby declare under penalty of perjury, that:

1. I am the Executive Vice President and Chief Financial Officer of Debtor Audacy, Inc. ("**Audacy**"). The above-captioned Debtors and Debtors-in-possession (collectively, the "**Debtors**") have filed an Emergency Motion (the "**Motion**")[2] [Docket No. 196] seeking approval to enter into a settlement agreement between Audacy, Broadcast Music Inc. ("**BMI**"), and Otis Parent, Inc. ("**Otis**," and together with Audacy and BMI, the "**Parties**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. I have served as Executive Vice President and Chief Financial Officer of Audacy, Inc. since April 2017, supporting the Company through its 2017 merger with CBS Radio.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Audacy. The location of the Debtors' corporate headquarters and service address for purposes of these chapter 11 cases is: 2400 Market Street, 4th Fl Philadelphia, PA 19103.

[2] Capitalized terms not defined herein have the meanings given in the Motion.

Previously, I served as Chief Financial Officer at Travel Leaders Group, Chief Financial Officer of LIN Media, and Vice President of Finance at Dow Jones.

3. As a result of my roles at Audacy, I am familiar with the Debtors' day-to-day operations, business and financial affairs, books and records, and the circumstances that resulted in the negotiation of the proposed settlement agreement (the "**Settlement Agreement**") with BMI and Otis. I submit this declaration (this "**Declaration**") to assist the Court and parties in interest in understanding those circumstances, and in support of the Debtors' Emergency Motion authorizing the Debtors to enter into the Settlement Agreement and granting related relief.

4. Except as otherwise indicated, the statements in this Declaration are based upon my personal knowledge, my (or members of my team's) discussions with other members of Audacy's management team, employees, and advisors, my review of relevant documents and information concerning the Settlement Agreement, or my opinions based upon my experience and knowledge. If called upon to testify, I could and would testify competently to the facts set forth herein on that basis. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.

## I. Introduction

5. Audacy, Inc., formerly known as Entercom Communications Corp., was founded in 1968 at the dawn of the FM radio industry as a Pennsylvania corporation. Over the next few decades, Audacy expanded its business in new markets across the United States and established itself as an industry leader. It was listed on the New York Stock Exchange in connection with its initial public offering in 1999. Later that year, the Company acquired more than 40 radio stations from the Sinclair Broadcasting Group. After growing to the fourth largest industry player by revenue, in November 2017, the Company merged with CBS Radio, making it the second largest U.S. radio broadcaster with leading stations in most of the country's top 50 markets.

A.     **The Claims Against BMI**

6.     The claims being settled arise from the Debtors' status as stockholders in BMI, a privately held corporation organized under the laws of the State of Delaware.

7.     I understand that on November 20, 2023, BMI and certain affiliates of New Mountain Capital, L.L.C. ("**NMC**"), including Otis, executed a merger agreement, pursuant to which Otis would acquire BMI for cash.

8.     In connection with the potential acquisition of BMI, during December 2023 and January 2024, Audacy worked with BMI to review BMI's available corporate books and records relating to Audacy's ownership of shares of BMI stock.

9.     Audacy compiled evidence, from a combination of BMI's records, its own records, and publicly available information, that led it to believe that it was likely the holder of record of the shares of BMI stock represented by Certificate Nos. 1626, 1778, 1797, 1876, 1883, 2083, 2192, 2201 and 2259 in BMI's books and records (collectively, the "**Group 1 Shares**"). Audacy's claim to the Group 1 Shares is based on its acquisition of, or acquisition of BMI shares from, entities or radio stations in whose name(s) the applicable stock certificates had been issued.

10.    Audacy also compiled evidence that led it to believe that it had superior claims to certain additional shares of BMI stock (such shares, the "**Additional Shares**") that were issued in the name(s) of other entities, although Audacy expected BMI to question Audacy's ownership of such shares based on the evidence that Audacy compiled, as well as the lack of easily accessible evidence going back several decades. Moreover, a large portion of those shares appeared to be registered to other entities who, in the judgment of the Debtors' management, were likely to be highly motivated to contest any competing claims presented by Audacy.

11. As a result of its investigation into BMI's books and records, Audacy was prepared to file suit to compel the issuance of stock certificates pursuant to 8 Del. C. §§ 158 and 168, as well as for various other claims. In its lawsuit, Audacy was prepared to request that the merger be enjoined until the Parties had resolved the outstanding questions regarding Audacy's stockholdings.

12. During the week of January 15, 2024, BMI informed Audacy that the transaction was scheduled to close imminently. As such, Audacy was prepared to file suit on Monday, January 22, 2024.

**B.   BMI's Claims Against Audacy**

13. In the years preceding the Chapter 11 Cases, BMI and Audacy had been negotiating a potential resolution to two pending claims that BMI has asserted against Audacy arising from their commercial relationship.

14. First, since prior to the filing of the Chapter 11 Cases, BMI and Audacy have been negotiating claims that BMI has asserted in connection with an audit (the "**2017-2019 Audit**") that BMI conducted of Audacy's calculation and reporting to BMI of Audacy's 2017, 2018, and 2019 revenue subject to license fees pursuant to the licensing agreement between BMI and Audacy for the period of January 1, 2017 to December 31, 2021 (the "**2017-2021 Licensing Agreement**"), as well as potential claims that BMI could assert in connection with Audacy's calculation and reporting to BMI of Audacy's 2020 revenue subject to license fees pursuant to that 2017-2021 Licensing Agreement. Based on the results of the 2017-2019 Audit, BMI asserted that Audacy owed approximately $1.68 million in fees to BMI. Audacy promptly disputed BMI's claim and, since 2020, has been negotiating with BMI to settle that matter and any potential claims relating to Audacy's 2020 revenue subject to license fees.

4

15. Second, BMI has asserted that Audacy owes approximately $9.26 million in unpaid license fees and accrued late fees (the "**Fee Dispute**"). Audacy has disputed the sums asserted by BMI since 2018.

C. **Settlement Agreement**

16. After extended discussions and negotiations, BMI and Audacy reached a preliminary resolution of Audacy's claims and certain of BMI's claims. A true and correct copy of the parties' Settlement Agreement was filed at Docket No. 197-1.

17. The material terms of the Settlement, as set forth in the Settlement Agreement, are:[3]

    a. **Group 1 Shares**: Prior to the closing of the merger between BMI and Otis, Audacy will submit lost security affidavit and indemnity agreements in respect of the Group 1 Shares to BMI, which include indemnification obligations of Audacy consistent with those set forth in the Settlement Agreement (the "**Lost Security Affidavit and Indemnity**"), and BMI will issue to Audacy new stock certificates with respect to such Group 1 Shares, such that, upon closing of the merger, Audacy can submit the relevant documentation to the paying agent to receive payment of the merger consideration in respect of the Group 1 Shares, an amount totaling approximately $25.4 million in the aggregate;

    b. **Group 2 Shares**: The merger consideration for a subset of the Additional Shares represented by Certificate No. 2053 in BMI's books and records (the "**Group 2 Shares**"), an amount totaling approximately $3.44 million in the aggregate, will be held by the paying agent for a period of 90 days after the closing of the merger. Should a competing

---

[3] To the extent of any conflict between the summary presented herein and the Settlement Agreement, the terms of the Settlement Agreement govern.

claimant ("**Claimant**") assert a claim to the Group 2 shares during this 90-day period and provide reasonable documentation to support its claim, BMI and Audacy will attempt in good faith to retain a neutral third-party reasonably acceptable to all parties (including the Claimant) to resolve such dispute, whose decision as to the ownership of the Group 2 Shares will be final and binding on all parties; provided, however, that if the Claimant is unwilling to appear before an arbitrator, BMI and Audacy may proceed to resolve the dispute before a court of competent jurisdiction (the "**Claims Resolution Process**"). If no such Claimant appears within 90 days after the closing of the merger, Audacy will submit a Lost Security Affidavit and Indemnity to BMI, which shall be countersigned by BMI, such that Audacy can submit the countersigned Lost Security Affidavit and Indemnity to the paying agent (along with any additional documentation required by the paying agent in accordance with the paying agent agreement) to receive payment of the merger consideration in respect of the Group 2 Shares.

    c.    **Group 3 Shares**: The merger consideration for an additional subset of the Additional Shares represented by Certificate No. 2038 in BMI's books and records (the "**Group 3 Shares**," and together with the Group 2 Shares, the "**Pending Shares**"), an amount totaling approximately $10.14 million in the aggregate, will be held by the paying agent for a period of 120 days after the closing of the merger. Should a Claimant assert a claim to the Group 3 Shares during the 120 days following the closing of the merger, resolution of the ownership of the Group 3 Shares will be subject to the Claims Resolution Process described above. If no such Claimant appears within 120 days after the closing of the merger, Audacy will submit a Lost Security Affidavit and Indemnity to BMI, which shall be countersigned by BMI, such that Audacy can submit the countersigned Lost

6

Security Affidavit and Indemnity to the paying agent (along with any additional documentation required by the paying agent in accordance with the paying agent agreement) to receive payment of the merger consideration in respect of the Group 3 Shares.

    d.    **Audit Dispute**:  Audacy will pay to BMI $550,000 in full settlement of claims arising out of (x) the 2017-2019 Audit and (y) Audacy's 2020 revenue subject to license fees pursuant to the 2017-2021 Licensing Agreement (together, the "**Audit Dispute**").  That payment will be made within five business days after the Settlement Agreement is approved by this Court and becomes effective in accordance with its terms. For the avoidance of doubt, no aspect of the Fee Dispute is resolved by this settlement of the Audit Dispute.

    e.    **Fee Dispute**:  The Fee Dispute will be resolved by BMI and Audacy separately within 60 days of the closing of the merger, with the unpaid amount treated as an allowed general unsecured claim against the Debtors.  Audacy will be required to provide notice of any such resolution to the First Lien Ad Hoc Group and Second Lien Ad Hoc Group; no further notice will be required.

    f.    **Releases**: The Parties will provide for mutual releases to be further detailed in the Settlement Agreement, including that both parties will fully release any claims they have or could have asserted with respect to any and all BMI shares (with respect to the Pending Shares, outside of the Claims Resolution Process and subject to certain exceptions detailed in the Settlement Agreement), regardless of whether or not those shares were specifically the subject of, or were otherwise referenced in, prior discussions between the Parties, as well as with respect to the Audit Dispute and the merger.

g. **Indemnification**: Audacy will provide an indemnity to BMI, Otis, NMC and certain other related parties related to or arising from (a) the representations made by Audacy or any of Audacy's subsidiaries in any Lost Security Affidavit and Indemnity and (b) third-party claims to ownership of the Group 1 Shares, Group 2 Shares, and Group 3 Shares.

h. **Merger Timeline**: The merger will not close earlier than two business days after the Settlement Agreement is approved by this Court and becomes effective in accordance with its terms.

## II. Merits of the Compromise

18. I have reviewed the Settlement and believe it is a fair and reasonable compromise, is in the best interest of the Debtors' estates, and is a sound exercise of the Debtors' business judgment.

19. While the Debtors believe they have a valid claim to ownership of all of the Group 1 Shares and all of the Additional shares, the strength of the evidence of ownership of the shares is varied, and Audacy's claims to each would be subject to defenses that could be asserted by BMI and by other potential stockholders. The Settlement allows the Parties to avoid litigating their competing claims and defenses.

20. In the Debtors' judgment and that of their advisors, Audacy had the best chance of establishing clear title to the Group 1 Shares, which are shares that are primarily registered in the name of companies that Audacy has acquired over the years. As part of the Settlement proceeds, Audacy will be entitled to receive the merger consideration in respect of all of the Group 1 Shares upon closing of the merger—i.e., a 100% recovery—in an amount totaling approximately $25.4 million in the aggregate.

21. After extensive discussions with BMI's counsel, Audacy also believed that it could, with sufficient time, provide evidence sufficient to establish a claim to all of the Pending Shares, but the evidence currently available to support those claims is less complete than with regard to the Group 1 Shares, thus presenting a risk that Audacy might not prevail in court if those claims were contested. So long as a competing Claimant does not assert and prove a superior claim to ownership of those shares supported by reasonable supporting documentation during the timelines described above, Audacy will also receive 100% of the merger consideration in respect of the Pending Shares—an amount totaling up to approximately $13.58 million in the aggregate.

22. As to the remaining Additional Shares, for which Audacy is releasing its claims, Audacy expects BMI to argue that Audacy's claims are subject to a high burden of proof and evidentiary hurdles to definitively establish a chain of custody of such shares to Audacy; further, a significant portion were registered to other entities or individuals who would have been entitled to a presumption that their claim was valid under Delaware law. Moreover, BMI and others would likely have asserted time-based defenses, including laches and applicable statutes of limitation, which Audacy would have to overcome in a contested litigation.

23. The Settlement also allows the Parties to avoid the time and expense necessary to prevail in a contested litigation that, even on an expedited schedule, would likely last several months and cost millions of dollars.

24. Much of the evidence that would be required to support a claim likely to prevail in litigation has been in off-site storage for years and would take a great deal and expense to locate, retrieve, and analyze.

25. There is also a risk that the very act of seeking injunctive relief to stop the merger and following litigation could cause NMC and BMI to abandon the merger altogether. If that were

to happen, it is possible the recovery to the Debtors' estates from its ownership of BMI shares would be zero. BMI could elect not to pursue a sale to another party and, even if BMI did elect to pursue another sale, it is possible that no new buyer would emerge. Even if a subsequent buyer did emerge, it is possible that the new buyer would not be willing to pay as much for BMI or that the transaction would not occur for an extended period of time, as the new buyer engages in due diligence, negotiates the terms of the transaction, and works to secure the necessary regulatory approvals. Therefore, the very act of filing suit—even if the suit is otherwise successful on the merits—could result in no recovery at all.

26. With respect to the Audit Dispute, the Debtors believe that the Settlement is a fair and reasonable compromise based on the parties' prior settlement negotiations relating to the 2017-2019 Audit and the risk of potential claims that BMI could assert in connection with Audacy's calculation and reporting to BMI of Audacy's 2020 revenue subject to license fees pursuant to the 2017-2021 Licensing Agreement. Audacy will pay only $550,000 in full settlement of BMI's claim of approximately $1.68 million for the 2017-2019 Audit—or only approximately 33% of the claimed amount—and will gain certainty that it will not be subjected to additional time and expense in connection with BMI auditing Audacy's calculation and reporting of its 2020 revenue.

27. Finally, the Settlement is the product of hard-fought, good-faith, arms'-length bargaining. And the Settlement is in the best interest of all stakeholders (including Debtors' secured creditors, the only impaired parties) because it will (a) favorably resolve the Audit Dispute to save the Debtors' estates a substantial portion of BMI's claimed fees and (b) subject to the closing of the merger, bring in at least $25 million of funds to the Debtors' estates (potentially within days of this settlement being approved), with the possibility for up to an additional $13.6 million in the following months. The share proceeds far exceed the approximately

$5.2 million that that had been estimated in the DIP Budget to be received from the merger, and therefore represent an unanticipated and significant contribution to the Debtors' estates. Securing these proceeds now also avoids the risk that the Debtors' estates would achieve no recovery at all, which would be possible if the Debtors pursued litigation.

28. Prior to entering into the Settlement, the Debtors consulted with certain members of the First Lien Ad Hoc Group and the Second Lien Ad Hoc Group regarding the principal business terms of the Settlement. All members with which the Debtors consulted indicated that they are supportive of the principal business terms of the Settlement and the relief requested in this Motion.[4] Thus, representatives of the stakeholders with the greatest economic interest in the Settlement approve of it, which the Debtors considered when deciding how to proceed.

29. For all of the reasons above, I believe that the benefits of the Settlement outweigh the costs and that the Debtors' interests would be served by its approval.

*[The remainder of this page is intentionally left blank.]*

---

[4] Out of an abundance of caution, to avoid members of the Ad Hoc Groups having material nonpublic information that could restrict them from trading, the Debtors were only able to consult with a subset of holders who were willing to accept the information under a confidentiality agreement. However, based on their feedback, the Debtors are optimistic that the full membership of the Ad Hoc Groups will support the Settlement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: February 1, 2024

*Richard Schmaeling*
Richard J. Schmaeling
Executive Vice President and Chief Financial Officer
Audacy, Inc.