IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| AUDACY, INC., *et al.*, | § § § | Case No. 24-90004 (CML) |
|  | § | (Jointly Administered) |
| Debtors.[1] | § § § | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING SALE OF REAL ESTATE PROPERTY, FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO 83 LEO
PROPERTY OWNER LLC, (II) APPROVING PURCHASE AND SALE AGREEMENT,
RELATED LEASE AGREEMENT, AND INTERCREDITOR AGREEMENT,
<u>AND (III) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 2:30 p.m. (prevailing Central Time) on February 20, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing (the "<u>Sale Hearing</u>") will be conducted on this matter on February 20, 2024 at 2:30 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Audacy (the "**<u>Case Website</u>**"). The location of the Debtors' corporate headquarters and service address for purposes of these chapter 11 cases is: 2400 Market Street, 4th Fl, Philadelphia, PA 19103.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") respectfully state the following in support of this emergency motion (the "**Motion**"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "**Order**"), substantially in the form attached hereto:

    (i) approving the transactions contemplated by that certain purchase and sale agreement (the "**PSA**")[2] by and between Debtor Audacy Atlas, LLC ("**Seller**" or "**Audacy Atlas**") and 83 Leo Property Owner LLC ("**Purchaser**" or "**83 Leo**");

    (ii) approving that certain lease agreement (the "**Lease Agreement**") by and between Debtor Audacy Massachusetts, LLC ("**Tenant**" or "**Audacy Massachusetts**") and 83 Leo;

    (iii) approving that certain Intercreditor, Subordination and Standstill Agreement (the "**Intercreditor Agreement**")[3] by and between Audacy Atlas, 83 Leo, and Cambridge Savings Bank (the "**Bank**"); and

    (iv) granting related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PSA or the First Day Declaration (as defined herein).  The First Day Declaration and other relevant case information is available on the Case Website.

[3] The PSA, Lease Agreement, and Intercreditor Agreement (together, with any ancillary documents related thereto, the "**Definitive Documents**") were provided to counsel for the Ad Hoc First Lien Group and Ad Hoc Second Lien Group.  The agreements can be made available to the Court upon request but are not attached hereto due to confidentiality concerns.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The bases for the relief requested herein are sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "**Bankruptcy Code**"), Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 4002-1(e) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**").

## BACKGROUND

5. On January 7, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and commenced these chapter 11 cases (the "**Chapter 11 Cases**"). A detailed description of the Debtors, their business, and the facts and circumstances of the Chapter 11 Cases is set forth in the *Declaration of Heath C. Gray in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 26] (the "**First Day Declaration**").

6. On January 8, 2024, the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 [Docket No. 45]. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or an examiner has been made in the Chapter 11 Cases, and no official statutory committees have been appointed or designated by the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**").

7. These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' first lien senior secured loan debt and the Debtors' second lien secured note debt. Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of January 4, 2024 (as may be amended, modified, or

3

supplemented, the "**Restructuring Support Agreement**") with beneficial holders of (a) approximately 82.2% of the Debtors' first lien senior secured loans and (b) approximately 73.6% of the Debtors' second lien secured notes.

8. The Debtors' *Joint Prepackaged Plan of Reorganization for Audacy, Inc. and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 24] (as may be amended, modified, or supplemented, the "**Plan**") was filed on the Petition Date, along with the Debtors' *Disclosure Statement for the Joint Prepackaged Plan of Reorganization for Audacy, Inc. and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 25] (as may be amended, modified, or supplemented, the "**Disclosure Statement**"). The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.

9. Prior to the Petition Date, votes on the Plan were solicited from eligible holders of Class 4 First Lien Claims and Class 5 Second Lien Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan. On January 8, 2024, the Court entered an order [Docket No. 82], which, among other things, (a) granted conditional approval of the Disclosure Statement and authority to solicit votes on the Plan from the remaining holders of Class 4 First Lien Claims and Class 5 Second Lien Notes Claims, and (b) scheduled a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan on February 20, 2024 at 2:30 p.m. (Prevailing Central Time).

10. In connection with the sale proposed in the Motion (the "**Sale**"), the Debtors will receive over $11.1 million at closing, with an additional payment of up to $7 million depending on the market value of the Property (as defined below) when such payment is due. Audacy Massachusetts will continue leasing the Property from the Purchaser, allowing it to continue

4

operations there for approximately two years.  Pursuant to the terms of the PSA, the Debtors will need to enter into additional ancillary agreements, including a junior priority mortgage securing 83 Leo's obligation to make the additional payment to Audacy Atlas and the Intercreditor Agreement with the Bank — which is financing 83 Leo's purchase — that will allow the Bank to have a senior priority mortgage on the Property.

11.     Since May 2021, the Debtors have engaged in an extensive marketing and negotiating process in an attempt to locate a potential buyer for the Property, which the Debtors believe is non-core and so can be sold for the benefit of the Debtors' estates without any impact on the Debtors' business operations.  In fact, operationally, the Debtors believe that the ultimate relocation of its Audacy Massachusetts facility with updated technology will result in notable savings compared to the current costs of operating and maintaining this large Property.  Following substantial due diligence efforts and extensive discussions, the Debtors received an offer from 83 Leo, which the Debtors determined in their reasonable judgment to be the best offer received for the Property.  Since the initial offer that 83 Leo made on the Property, the real estate market in the Boston area has changed significantly as a result of a change in local planning, the actions of city officials (including an unofficial hold on certain development projects), and increases in cost of construction and interest rates.  Several times since the initial offer was received, the Debtors have consulted with their real estate advisors to understand current market conditions and to discuss the value of the Property in the event the Debtors decided to re-market the Property.  The Debtors believe that the current offer from 83 Leo is the best offer that they will receive because 83 Leo is best positioned to close on the Property without any contingencies, and the Purchase Price (as defined below) is superior to any other offer that could be reasonably expected through re-marketing the Property.  The Debtors do not believe that additional marketing efforts would be

fruitful and, in fact, are concerned that a further delay in the closing of a sale could adversely affect the sale process and 83 Leo's interest in purchasing the Property. Further, the Debtors are concerned that any other potential purchasers would be willing to pay even less than the Purchase Price given the changing real estate market and need to undertake a substantial due diligence process, which 83 Leo has already completed.

12. The Debtors have shared the Motion with the Ad Hoc First Lien Group and Ad Hoc Second Lien Group, which both support the relief sought herein.

## SUMMARY OF THE SALE[4]

13. The following sets forth a summary of the material terms and conditions:

| | |
|---|---|
| Seller | Debtor Audacy Atlas, LLC, a Delaware limited liability company |
| Purchaser | 83 Leo Property Owner LLC, a Massachusetts limited liability company |
| Property | 83 Leo M. Birmingham Parkway, Boston, MA, including all land as well as any improvements thereto (the "**Property**") |
| Purchase Price | Up to $18,120,000 (the "**Purchase Price**"), payable in two installments:<br>• $11,120,000 payable at closing (including a $1,000,000 deposit payable upon execution of the PSA) (the "**First Installment**")<br>• Up to $7,000,000 payable (depending on the market value of the property at the time) upon the later of (i) receipt of certain zoning approvals or (ii) Audacy Massachusetts vacating the Property (the "**Second Installment**") |
| Closing Date | No later than March 6, 2024, or Purchaser can terminate |
| Security for Second Installment | At closing, Purchaser shall deliver to Seller a fully executed mortgage, Assignment of Leases and Rents and Security Agreement as security for Purchaser's obligations in connection with the Second Installment |

---

[4] This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Definitive Documents, the latter governs in all respects. This is a general overview, not a complete summary of all terms, and is subject in all respects to the terms of the Definitive Documents.

| Lease of the Property | At closing, Audacy Massachusetts, as lessee, and Purchaser, as lessor, shall enter into the Lease Agreement, under which Audacy Massachusetts shall lease the Property |
| --- | --- |
| | Audacy Massachusetts will pay a base rent equal to $40,000 per month ("**Base Rent**"), with annual increases of three percent (3%) each year, for a term of two (2) years from the Closing Date, with up to an additional ninety (90) days available at Audacy Massachusetts' option |
| | This is a triple net lease pursuant to which Audacy Massachusetts shall pay insurance costs, utility charges, personal property taxes, real estate taxes and operating costs |
| | Audacy Massachusetts will not be required to make a security deposit |
| Intercreditor Agreement | Audacy Atlas, 83 Leo, and the Bank will enter into an Intercreditor Agreement |
| | 83 Leo will borrow $6,500,000 from the Bank, and may obtain other senior loans but shall not exceed at any time an aggregate principal amount in excess of $11,000,000 |
| | The Bank will hold a senior priority mortgage lien on the Property, and Audacy Atlas will hold a junior priority mortgage interest on the Property |

## APPLICABLE AUTHORITY

I. **The Sale of the Property, the Entry into the Lease Agreement, and the Entry into the Intercreditor Agreement are Fair and Consistent with the Debtors' Reasonable Sound Business Judgment.**

14.     The Sale of the Property, entry into the Lease Agreement, entry into the Intercreditor Agreement, and entry into all other Definitive Documents required to close the Sale are sound exercises of the Debtors' business judgment. Section 363(b)(1) authorizes courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances."). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business

7

upon a finding that such use is supported by sound business reasons. *See*, *e.g.*, *In re BNP Petrol. Corp.*, 642 F. App'x 429, 434–35 (5th Cir. 2016) (citing *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").[5]

15. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to selling an estate's assets. *See, e.g., In re Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business but the movant must articulate some business justification for the sale.").

16. The Debtors believe that the consideration Audacy Atlas will receive under the PSA — up to $18.12 million — represents fair market value for the Property. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g.*, *In re Bigler, LP*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (emphasizing that the goal of a sale process is "maximizing value for the estate"). Here, the sale of the Property to 83 Leo will generate much-needed additional liquidity for the Debtors at a fair and reasonable price, and

---

[5] *See also ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO L.L.C.)*, 650 F.3d 593 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. . . . The business judgment standard in section 363 is flexible and encourages discretion.").

based on the Debtors' prepetition marketing efforts, the Debtors are confident that the transaction maximizes the value of the Property for the Debtors' estates.[6] Moreover, because of 83 Leo's expertise in development, the Property will be able to be put to a greater and higher use — possibly increasing the sale proceeds to the Debtors under the Second Installment — under 83 Leo's ownership than under the Debtors' ownership.

17. Moreover, one of the key terms of the PSA provides for Audacy Massachusetts continuing to occupy the Property as Tenant. This arrangement preserves for the Debtors the space needed to continue operations while identifying and constructing a more efficient and cost-saving facility and still generating additional value for the Debtors' estates by selling the Property for further development. Additionally, the Debtors believe that the terms of the Lease Agreement represent a fair market value for the property being leased. In connection with the Sale, the Debtors analyzed comparable rental rates and determined that the $40,000 monthly Base Rent and additional rent to be paid were favorable terms in the local market for approximately 32,000 square feet of office space. By entering into the Lease Agreement and remaining in the Property after the Closing Date of the Sale, the Debtors will ensure that their operations are not disrupted while the zoning and permitting process is undertaken by 83 Leo to redevelop the Property for its best and highest use. As a result, the Lease Agreement will provide Audacy Massachusetts and the Debtors time to secure valuable cost-savings and operational efficiency for the ongoing operations of the Debtors into the future.

---

[6] For the avoidance of doubt, the Sale proceeds will be not used to prepay the DIP Loans (as defined in the Plan) as the Property is expressly carved-out from prepayment as provided in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [Docket No. 79].

18. Lastly, the Debtors believe that the terms of the Intercreditor Agreement are fair and reasonable, and are necessary for the consummation of the Sale. The Intercreditor Agreement ensures that 83 Leo will have sufficient liquidity to finalize the Sale, by facilitating Bank's loan to 83 Leo (the proceeds of which will go to Audacy Atlas) while also protecting Bank's and Audacy Atlas's respective interests in the event of a default by 83 Leo. Accordingly, the Intercreditor Agreement is a vital component of the Sale and will directly support the Debtors' business objectives in the Sale.

19. For the reasons listed above, the Debtors have determined, in their reasonable business judgment, that the proposed Sale of the Property, and the entry into the PSA, Lease Agreement, and Intercreditor Agreement are in the best interest of the Debtors' estates. Accordingly, the Debtors request that the Court approve the Debtors' entry into the PSA, the Lease Agreement, and the Intercreditor Agreement, and performance of their obligations thereunder.

## II. The Proposed Private Sale is Appropriate under Bankruptcy Rule 6004.

20. Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) (noting that "there is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction") (quoting *In re Woodscape L.P.*, 134 B.R. 165, 174 (Bankr. D. Md. 1991)); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("Sales of property rights outside the ordinary course of business may be by private sale or public auction."); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("Section 363(b) is not limited to

10

sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for section 363(b) transfers, expressly provides for private sales."). Additionally, courts have held that a debtor has broad discretion to determine the manner in which its assets are sold. *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981); *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale).

21. Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. *See In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"). Here, the Debtors engaged in a months-long marketing process of the Property and more than two years of negotiations prior to coming to agreement with 83 Leo, and the Debtors are confident that this is the best offer for the Property available. Indeed, such good business reasons exist here because the PSA maximizes the value received for the Property being sold and provides a significant and immediate benefit to the Debtors' estates. If the Sale does not close by March 6, 2024, the Purchaser may forego the transaction entirely, leaving the Debtors with a non-core real property asset and no buyer in a difficult market for commercial real estate. Therefore, the Debtors request that the Court approve the proposed private sale of the Property to Purchaser in accordance with the PSA.

## III. The Property May Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances under Bankruptcy Code Section 363(f).

22. Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of all liens, claims, interests and encumbrances provided that one of the following conditions is met:

      i. applicable non-bankruptcy law permits sale of such property free and clear of such interests;

    ii.    such entity consents;

    iii.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    iv.    such interest is in bona fide dispute; or

    v.    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Property free and clear of the interests.

    23.    Here, the Debtors are selling the Property in a commercially reasonable manner where the value of the proceeds fairly reflect the value of the Property. Moreover, to the Debtors' knowledge, there are no mortgages on the Property, and the Debtors are unaware of any other liens, claims, interests, and encumbrances on the Property.[7] Without a guarantee that the Property is sold free and clear of any encumbrances, the title company has indicated that it will not provide insurance to 83 Leo since Audacy Atlas is in bankruptcy. Without title insurance, 83 Leo has indicated that it will not agree to purchase the Property. Thus, without an order authorizing the sale free and clear sale under section 363(f), the Debtors will be unable to sell the Property to 83 Leo and may be unable to find any buyer during the Chapter 11 Cases. Selling the Property now will provide critical liquidity to the Debtors and, as described above, the Debtors believe that there

---

[7] To the extent that the Court finds that the Sale satisfies section 363(f), the Debtors request that the Court also hold that the Sale is free and clear of successor liability relating to the Debtors' previous ownership of the Property.

12

are no holders of liens, claims, or interests in the property who will be impacted by such a sale. Moreover, to the extent such holders exist, the Debtors' Plan proposes to pay them in full.

### IV.  83 Leo Should Receive the Protections of Bankruptcy Code Section 363(m).

24. Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014). An appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Bleaufontaine, Inc*., 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). For the same reasons, 83 Leo is a "good faith" purchaser within the meaning of section 363(m) and should be entitled to its protections. The Debtors have engaged in extensive, arms-length negotiations with 83 Leo over the Sale and have reached a deal that will maximize the value of the Property for the Debtors' estates.

### EMERGENCY CONSIDERATION

25. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i), the Complex Case Procedures, and Bankruptcy Rules 2002(a)(2) and 6004(b), which authorize a court to approve a use of property of the estate on an emergency basis "for cause shown." The PSA requires that closing occur by no later than March 6, 2024; thus, any delay in granting the relief requested could prevent consummation of the Sale, depriving the Debtors of a critical source of liquidity and potentially preventing a sale in the foreseeable future. Finally, all creditors who could be conceivably impacted by the Sale are proposed to be unimpaired under the Plan or the Sale is supported by Ad Hoc Groups representing a supermajority of such creditor classes. As such, the Debtors believe

that they have shown "cause" under Bankruptcy Rule 6004, and the Debtors believe that emergency consideration is necessary and respectfully request that this Motion be heard on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

26. To implement the foregoing immediately, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons explained above. Ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## RESERVATION OF RIGHTS

27. Nothing contained herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of any Debtor's or any other party in interest's rights to dispute any claim on any grounds; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion, or any order granting the relief requested by the Motion; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of any Debtor's estate; (f) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a waiver of any claims or causes of action which may exist against any entity.

**REQUEST TO SHORTEN AND LIMIT NOTICE**

28. The Debtors have provided or will provide notice of this Motion to: (a) the U.S. Trustee; (b) the agent and counsel for the agent for the First Lien Credit Facility; (c) the trustee and counsel for the trustee for the Second Lien Secured Notes; (d) the agent and counsel for the agent for the Postpetition Securitization Program; (e) counsel for the Ad Hoc First Lien Group; (f) counsel for the Ad Hoc Second Lien Group; (g) the agent and counsel for the agent for the DIP Facility; (h) Cambridge Savings Bank; (i) 83 Leo Property Owner LLC, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").

29. Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail to all creditors with respect to "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or direct another method of giving notice[.]"

30. This Court has discretion pursuant to Bankruptcy Rule 9007 and Local Rule 4001-1 to limit notice with regard to this Motion. Given the nature and status of this case, the Debtors believe that service of this Motion on the full creditor matrix (approximately 45,000 creditors) would be unnecessary and would impose an undue burden on the Debtors' estates financially and administratively. Virtually all such creditors will either be paid in full under the Plan or are part of a creditor class for which an Ad Hoc Group representing a supermajority of such creditor class has already agreed to the Sale. *Most importantly, such creditors do not have an interest in the Property*.

31. Accordingly, the Debtors request that they be authorized to limit notice of this Motion and any related notice of hearing as set forth herein. In light of the nature of the relief requested, the Debtors believe that no other or further notice is required or needed under the circumstances.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: February 8, 2024

| | |
|---|---|
| Respectfully submitted,<br>*/s/ John F. Higgins*<br>John F. Higgins (TX Bar No. 09597500)<br>M. Shane Johnson (TX Bar No. 24083263)<br>Megan Young-John (TX Bar No. 24088700)<br>**PORTER HEDGES LLP**<br>1000 Main St., 36th Floor<br>Houston, Texas 77002<br>Tel:   713-226-6000<br>Email: jhiggins@porterhedges.com<br>         sjohnson@porterhedges.com<br>         myoung-john@porterhedges.com<br><br>– and – | George A. Davis (NY Bar No. 2401214)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Tel:   212-906-1200<br>Email:  george.davis@lw.com<br><br>– and –<br><br>Caroline Reckler (IL Bar No. 6275746)<br>Joseph C. Celentino (NY Bar No. 5508809)[8]<br>**LATHAM & WATKINS LLP**<br>330 North Wabash Avenue, Suite 2800<br>Chicago, Illinois 60611<br>Tel:   312-876-7700<br>Email: caroline.reckler@lw.com<br>         joe.celentino@lw.com<br><br>– and –<br><br>Jeffrey T. Mispagel (NY Bar No. 4842779)<br>Deniz A. Irgi (*pro hac vice admission pending*)<br>**LATHAM & WATKINS LLP**<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071<br>Tel:   213-485-1234<br>Email: jeffrey.mispagel@lw.com<br>         deniz.irgi@lw.com |

*Proposed Counsel to the Debtors and Debtors in Possession*

---

[8] Not admitted to practice in Illinois.  Admitted to practice in New York.

**CERTIFICATE OF ACCURACY**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                */s/ Carmela Masi*
                                                Carmela Masi

**CERTIFICATE OF SERVICE**

I certify that on February 8, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

                                                */s/ John F. Higgins*
                                                John F. Higgins