IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| AUDACY, INC., *et al.*, | § § § | Case No. 24-90004 (CML) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § | |

**DECLARATION OF RICHARD J. SCHMAELING IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING SALE OF REAL ESTATE PROPERTY, FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO 83 LEO
PROPERTY OWNER LLC, (II) APPROVING PURCHASE AND SALE AGREEMENT,
RELATED LEASE AGREEMENT, AND INTERCREDITOR AGREEMENT,
AND (III) GRANTING RELATED RELIEF**

I, Richard J. Schmaeling, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I submit this declaration (the "**Declaration**") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Sale of Real Estate Property, Free and Clear of All Liens, Claims, Encumbrances, and Interests to 83 Leo Property Owner LLC, (II) Approving Purchase and Sale Agreement, Related Lease Agreement, and Intercreditor Agreement, and (III) Granting Related Relief* [Docket No. 233] (the "**Motion**").[2]

2. I serve as the Executive Vice President and Chief Financial Officer of the above-captioned debtors and debtors in possession (each a "**Debtor**" and collectively, the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Audacy. The location of the Debtors' corporate headquarters and service address for purposes of these chapter 11 cases is: 2400 Market Street, 4th Fl, Philadelphia, PA 19103.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

"**Debtors**" and together with their non-debtor affiliates and subsidiaries, the "**Company**" or "**Audacy**"). I have served as Executive Vice President and Chief Financial Officer of Audacy, Inc. since April 2017, supporting the Company through its 2017 merger with CBS Radio. Previously, I served as Chief Financial Officer at Travel Leaders Group, Chief Financial Officer of LIN Media, and Vice President of Finance at Dow Jones.

3.  As a result of my roles at Audacy, I am familiar with the Debtors' business, day-to-day operations, and financial affairs, and I have been closely involved in the Debtors' restructuring efforts. I am an individual over the age of 18 and, if called upon, could and would testify to the facts set forth in this Declaration. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by members of the Debtors' management and professionals, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' industry, operations and financial condition. If called upon to testify, I would testify competently to the facts set forth herein on that basis.

## THE PSA

4.  Under the terms of the PSA, 83 Leo has agreed to purchase the Property, an office building and parking lot, for up to $18.12 million. In connection with the sale proposed in the Motion (the "**Sale**"), Audacy Massachusetts will continue leasing the Property from the Purchaser, allowing it to continue operations there for approximately two years. Pursuant to the terms of the PSA, the Debtors will enter into additional ancillary agreements, including a junior priority mortgage securing 83 Leo's obligation to make the additional payment to Audacy Atlas and the Intercreditor Agreement with Cambridge Savings Bank (the "**Bank**") — which is financing 83 Leo's purchase — that will allow the Bank to have a senior priority mortgage on the Property.

5.      I have reviewed the PSA, Lease Agreement, and Intercreditor Agreement; and the following sets forth a summary of the material terms and conditions thereof:[3]

| Seller | Debtor Audacy Atlas, LLC, a Delaware limited liability company |
|---|---|
| Purchaser | 83 Leo Property Owner LLC, a Massachusetts limited liability company |
| Property | 83 Leo M. Birmingham Parkway, Boston, MA, including all land as well as any improvements thereto (the "**Property**") |
| Purchase Price | Up to $18,120,000 (the "**Purchase Price**"), payable in two installments:<br>• $11,120,000 payable at closing (including a $1,000,000 deposit payable upon execution of the PSA) (the "**First Installment**")<br>• Up to $7,000,000 payable (depending on the market value of the property at the time) upon the later of (i) receipt of certain zoning approvals or (ii) Audacy Massachusetts vacating the Property (the "**Second Installment**") |
| Closing Date | No later than March 6, 2024, or Purchaser can terminate |
| Security for Second Installment | At closing, Purchaser shall deliver to Seller a fully executed mortgage, Assignment of Leases and Rents and Security Agreement as security for Purchaser's obligations in connection with the Second Installment |
| Lease of the Property | At closing, Audacy Massachusetts, as lessee, and Purchaser, as lessor, shall enter into the Lease Agreement, under which Audacy Massachusetts shall lease the Property<br><br>Audacy Massachusetts will pay a base rent equal to $40,000 per month ("**Base Rent**"), with annual increases of three percent (3%) each year, for a term of two (2) years from the Closing Date, with up to an additional ninety (90) days available at Audacy Massachusetts' option<br><br>This is a triple net lease pursuant to which Audacy Massachusetts shall pay insurance costs, utility charges, personal property taxes, real estate taxes and operating costs<br><br>Audacy Massachusetts will not be required to make a security deposit |
| Intercreditor Agreement | Audacy Atlas, 83 Leo, and the Bank will enter into an Intercreditor Agreement |

---

[3] This is a general overview, not a complete summary of all terms, and is subject in all respects to the terms of the Definitive Documents.

|  | 83 Leo will borrow $6,500,000 from the Bank, and may obtain other senior loans but shall not exceed at any time an aggregate principal amount in excess of $11,000,000 <br><br> The Bank will hold a senior priority mortgage lien on the Property, and Audacy Atlas will hold a junior priority mortgage interest on the Property |
|---|---|

6. I believe that this is the best offer available to the Debtors for the Property.

7. In 2021, the Debtors engaged in an extensive, arm's-length, months-long marketing process in an attempt to locate the best buyer for the Property. As a result of the marketing process, the Debtors received multiple offers to purchase the Property, which were narrowed down across three rounds of bidding. The Debtors continually consulted with Jones Lang LaSalle Incorporated ("**JLL**"), using their experience and knowledge of the market to determine the best offer. The 83 Leo offer was the highest offer received that, on the advice of JLL, had the best likelihood of being approved for the proposed use with a buyer that had a long track record for developing proposed projects to completion in the greater Boston area. The Debtors therefore decided to pursue the 83 Leo offer. Following substantial due diligence efforts and extensive discussions and negotiations over two years, the Debtors recently entered into the PSA with 83 Leo on terms that Debtors are confident is the best offer available for the Property.

8. The real estate market in the Boston area was in flux during this time due to local planning board changes, the actions of city officials (including a slow-down in approving larger development projects), and increases in cost of construction and interest rates. Because of the changing market, the Debtors consulted with JLL several times since 83 Leo's offer was received to understand current market conditions and to discuss the value of the Property in the event the Debtors decided to re-market it.

9. 83 Leo is prepared to close on the Property without any contingencies, and the Purchase Price is superior to any other offer that could be reasonably expected through re-marketing the Property. It is unlikely that additional marketing efforts would result in a better offer than the current offer from 83 Leo. Further, delays in closing the Sale could negatively impact the sale process and cause 83 Leo to forego the Sale completely.

10. Under the PSA, if the Sale does not close by March 6, 2024, 83 Leo may forego the transaction entirely, leaving the Debtors with a noncore real property asset and no buyer in a difficult market for commercial real estate. In order to maximize the value of the Property, it is essential that the sale of the Property occurs within the time constraints set forth in the Motion and PSA.

11. The Debtors are selling the Property on terms beneficial to the Debtors and their estates. The sale of the Property to 83 Leo will generate much-needed additional liquidity for the Debtors at a fair and reasonable price. The Sale will allow Audacy Massachusetts to remain in the Property as Tenant with favorable terms under the Lease Agreement while 83 Leo develops the Property, giving the Debtors ample time to find a suitable, cost-saving alternative property while continuing their operations and providing liquidity to the Debtors from the Sale proceeds. Ultimately, the relocation of Audacy Massachusetts' facility will reduce costs from having to operate and maintain a property of this size, but it will take time to identify a new location and construct a new facility. Furthermore, the Debtors also examined rental rates in the geographical market and determined that that the $40,000 monthly Base Rent and additional rent to be paid were favorable terms in the local market for approximately 32,000 square feet of office space.

12. In addition, I believe that the terms of the Intercreditor Agreement are fair and reasonable, and are necessary for the consummation of the Sale. The Intercreditor Agreement

ensures that 83 Leo will have sufficient liquidity to finalize the Sale. The Intercreditor Agreement will facilitate the Bank's loans to 83 Leo and will provide safeguards for the Bank's and Audacy Atlas's respective interests in the event of a default by 83 Leo.

13. I believe that the proposed Sale of the Property, and the entry into the PSA, Lease Agreement, and Intercreditor Agreement are in the best interest of the Debtors' estates.

14. Audacy Atlas holds good title to the Property.

15. I am unaware of any mortgages, liens, claims, interests, or encumbrances on the Property that would impact conveying good title in accordance with the Definitive Documents.

16. Without a guarantee that the Property is sold free and clear of any encumbrances other than as provided in the Definitive Documents, the title company has indicated that it will not provide insurance to 83 Leo since Audacy Atlas is in bankruptcy. Without title insurance, 83 Leo has indicated that it will not agree to purchase the Property.

17. The PSA and other Definitive Documents were offered in good faith, from arm's-length bargaining positions without collusion or fraud. 83 Leo has acted in good faith in connection with the Sale and is a good faith purchaser.

18. For the reasons stated herein, I respectfully submit that approval of the Motion is in the best interests of the Debtors and their stakeholders.

\* \* \*

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct.

Dated:  February 16, 2024         */s/ Richard J. Schmaeling*
                                  Richard J. Schmaeling
                                  Executive Vice President and Chief Financial Officer
                                  Audacy, Inc.